UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KIMAR FRASER, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | No. 3:21-cv-1190 (MPS) |
| | : | |
| LIEUTENANT DURANT, et al., | : | |
|     Defendants. | : | |

**MEMORANDUM OF DECISION RE:
DEFENDANTS' PRELIMINARY MOTION FOR SUMMARY JUDGMENT**

Plaintiff Kimar Fraser is an inmate housed at Cheshire Correctional Institution ("Cheshire") in the custody of the Department of Correction ("DOC"). On September 13, 2021, he filed this action under 42 U.S.C. § 1983 asserting civil rights violations during his confinement at Bridgeport Correctional Center ("BCC") while a pretrial detainee. Compl., ECF No. 1.

On initial review, the Court determined that Plaintiff had alleged plausible Fourteenth Amendment excessive force claims against Lieutenant Durant and Correction Officer Haynes and Fourteenth Amendment deliberate indifference claims against RN Lynne Munday, LPC Jamie Leohfelm, RN Kehinde Adeniji, and Lieutenant Durant. Initial Review Order ("IRO"), ECF No. 21.

On January 26, 2023, Defendants filed a preliminary motion for summary judgment on the basis of Plaintiff's failure to exhaust his administrative remedies. Mot. for Summ. Judg., ECF No.

1

48.[1] On March 10, 2023, Plaintiff filed his response to Defendants' motion for summary judgment.[2] Pl.'s Opp., ECF No. 55.

For the reasons that follow, Defendants' preliminary motion for summary judgment is GRANTED in part and DENIED in part.

I.     FACTUAL BACKGROUND

The following factual background is taken from the complaint,[3] the parties' Rule 56 statements and the underlying evidentiary record.[4] The following facts are undisputed unless otherwise noted.[5]

---

[1] On December 1, 2022, the Court entered a Scheduling and Case Management order, which permitted Defendants to file a "preliminary motion for summary judgment" on the basis of Plaintiff's nonexhaustion without prejudice to filing a subsequent motion for summary judgment. Order, ECF No. 44 at 5. The Order provided that Defendants' filing of their preliminary motion for summary judgment "will automatically stay any and all discovery" other than any disclosures required by the Order. *Id.*

[2] Defendants provided Plaintiff with a notice in compliance with Local Rule of Civil Procedure 56(b) to inform him that judgment may be entered against him on his claims if he did not "file papers as required by Rule 56 of the Federal Rules of Civil Procedure and Rule 56 of the Local Rules of Civil Procedure" and if Defendants' motion shows their entitlement to entry of judgment as a matter of law. Notice to *Pro Se* Litigant, ECF No. 48-3. The notice informed Plaintiff that he should review "very carefully" the copies of the attached rules.

[3] The Court's review of the record includes the allegations of the verified complaint. *See* ECF No. 1; ECF No. 19; *see also Jordan v. LaFrance*, No. 3:18-cv-01541 (MPS), 2019 WL 5064692, at *1 n.1, *4 (D. Conn. Oct. 9, 2019) (a "verified complaint ... may be considered as an affidavit" for summary judgment purposes"); *Walcott v. Connaughton*, No. 3:17-CV-1150, 2018 WL 6624195, at *1, n. 1 (D. Conn. Dec. 18, 2018).

[4] Local Rule 56(a)(1) provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact."

[5] Generally, the Court cites only the relevant paragraph in the Local Rule 56(a)1 Statement where a fact is not disputed. The page numbers cited in this ruling for documents that have been electronically filed refer to the page numbers imprinted by the electronic case filing system on the header of the documents and not to the page numbers of the original documents, if any.

Plaintiff was housed as a pretrial detainee at BCC from August 29, 2018 until November 26, 2018, when he was transferred to Hartford Correctional Center ("Hartford C.C."). Defs.' Rule 56(a) at ¶ 3. Plaintiff remained at Hartford C.C. until his transfer to MacDougall-Walker Correctional Institution on July 24, 2019. Defs.' ex. A, Inmate Movement, ECF No. 48-4. In his complaint, Plaintiff alleges that during a cell extraction on October 26, 2018, he was "viciously punched and kicked" by Lieutenant Durant and Officer Haynes, and Lieutenant Durant deployed a chemical agent in his face while Correction Officer Haynes restrained Plaintiff. IRO at 10; Compl. at ¶¶ 9, 12. Plaintiff asserts that RN Munday, LPC Loehfelm, RN Adenidji, and Lieutenant Durant later refused his requests to be decontaminated after exposure to the chemical agent. *Id.* at ¶¶ 17, 23.

**Administrative Directive 9.6**

For inmates housed in Connecticut state correctional facilities, the DOC's Administrative Directives provide the specific requirements an inmate must follow prior to filing a lawsuit in federal court. Administrative Directive 9.6 "provide[s] a means for an inmate to seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority[.]" A.D. 9.6(1).

Under the procedures in place during the timeframe relevant to Plaintiff's claim,[6] an inmate was required to first attempt to resolve the matter informally. Specifically, he or she

---

[6] Defendants have submitted as their exhibit B the version of A.D. 9.6 that was in effect in 2018, which is the relevant timeframe with respect to Plaintiff's claims. *See* Defs.' ex. B, ECF No. 48-5. A revised version of A.D. 9.6 became effective on April 30, 2021. A.D. 9.6, Inmate Administrative Remedies (revised Apr. 30, 2021), https://portal.ct.gov/DOC/AD/AD-Chapter-9.

3

could attempt to verbally resolve the issue with an appropriate staff member or supervisor. *See* A.D. 9.6(6)(A). If attempts to resolve the matter verbally were not effective, the inmate was required to make a written attempt by sending a specific form (CN 9601, Inmate Request Form) to the appropriate staff member. *See id.* The written form needed to "clearly state the problem and the action requested to remedy the issue." *Id.* Pursuant to the Directive, the correctional staff were required to respond to a written form within fifteen business days of receipt. *Id.*

If an inmate was not satisfied with the response to his request, he could file a Level 1 grievance. *See* A.D. 9.6(6)(C). The Level 1 grievance had to be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance, and inmates were directed to include with the grievance a copy of the response to the inmate's written request to resolve the matter informally or an explanation for why the response was not attached. *See id.* The Unit Administrator was required to respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. *See* A.D. 9.6(6)(I). The grievance could be returned without disposition, rejected, denied, compromised, upheld, or withdrawn. *See* A.D. 9.6(6)(D) & (E).

The procedures further provided that the inmate could appeal the Unit Administrator's disposition of the Level 1 grievance, or the Unit Administrator's failure to dispose of the grievance in a timely manner, through a Level 2 grievance. *See* A.D. 9.6(6)(G), (I), (K). An inmate seeking to appeal a Level 1 grievance was required to file the Level 2 appeal within five calendar days of the inmate's receipt of the decision on the Level 1 grievance. *See* A.D. 9.6(K). An inmate seeking to appeal the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner was required to do so within sixty-five days of the date the Level 1 grievance

4

was filed by the inmate. *See* A.D. 9.6(M). Level 2 appeals of inmates confined in Connecticut correctional facilities were reviewed by the appropriate District Administrator. *See* A.D. 9.6(6)(K). The District Administrator was required to respond to the Level 2 appeal within thirty business days of receipt of the appeal. *See id.*

Level 3 appeals were restricted to challenges to department policy, challenges to the integrity of the grievance procedure, and Level 2 appeals to which there had been no timely response by the District Administrator. *See* A.D. 9.6(6)(L). A Level 3 appeal was required to be filed within five calendar days from the inmate's receipt of the decision on the Level 2 appeal. *See id.* A Level 3 appeal of the District Administrator's failure to dispose of the Level 2 appeal in a timely manner needed to be filed within thirty-five days of the filing of the Level 2 appeal. *See* A.D. 9.6(6)(M). Level 3 appeals were reviewed by the Commissioner of the Department of Correction or his or her designee. *See* A.D. 9.6(6)(L).

**Administrative Directive 8.9**[7]

DOC Administrative Directive 8.9 governs the administrative remedies for health services. The version of Administrative Directive 8.9 relevant to Plaintiff's claims in this matter provided for two types of Health Services Review: (1) Diagnosis and treatment, which included a decision not to provide treatment; and (2) Review of an Administrative Issue, which addressed concerns of "a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider." A.D. 8.9(9).

---

[7] Defendants submitted as their exhibit G the version of A.D. 8.9 that was in effect in 2018, which is the relevant timeframe with respect to Plaintiff's claims. *See* Defs.' ex. G, ECF No. 48-10. A revised version of A.D. 8.9 became effective on April 30, 2021. A.D. 8.6, Inmate Administrative Remedies (revised), *see* https://portal.ct.gov/DOC/AD/AD-Chapter-8.

Under Section 10 of Directive 8.9, both types of Health Services Reviews required an inmate to seek informal resolution of "the issue face to face with the appropriate staff member or with a supervisor via written request utilizing CN 9601 Inmate Request Form." A.D. 8.9(10). A response to the inmate was to be made within fifteen calendar days of the written request. *Id.*

An inmate dissatisfied with a diagnosis or treatment could apply for a Health Services Review "if the informal resolution via inmate request was unsuccessful." A.D. 8.9(11). The inmate was required to check the Diagnosis/Treatment box on the form (CN 9602), explain concisely the cause of dissatisfaction, and deposit the form in the Health Services Remedies/Review box. *Id.* Upon receipt of CN 9602, the Health Services Review Coordinator was required to schedule a Health Services Review Appointment with the appropriate health care provider. A.D. 8.9(11)(A). If the physician decided that the existing diagnosis or treatment was appropriate, the inmate exhausted the Health Services Review. A.D. 8.9(11)(A). The physician was required to notify the inmate of the decision, in writing, within ten business days by indicating "No Further Action" in the disposition field. *Id.* If the physician decided that a different diagnosis or treatment was warranted, he/she could either (1) act on his/her decision; or, (2) refer the case to the Utilization Review Committee for authorization by indicating "Change of Treatment" or "Referred to URC" as appropriate. A.D. 8.9(11)(B).

Under Directive 8.9(12), an inmate could request review of an Administrative Issue by checking the box marked "All Other Health Care Issues" on the Health Services Review form (CN 9602). The inmate was required to provide a concise statement of what the inmate believed to be wrong and how the inmate had been affected, and to deposit the form in the Health Services box. *Id.* This request for review was to be evaluated by a Health Services Review Coordinator within

6

thirty days. A.D. 8.9(12)(A). If the inmate was dissatisfied with the response, the inmate could appeal the decision within ten business days. A.D. 8.9(12)(B). The appeal was to be decided and responded to by the designated facility health services director or designee within fifteen business days. A.D. 8.9(12)(C). For all issues relating to compliance with existing standards, this review was final, and the inmate exhausted the requisite Health Services Review process. *Id.* If the matter "relate[d] to a health service policy of the Department, the inmate [could] appeal to the DOC Director of Health Services" within ten business days from the receipt of the response. A.D. 8.9(12)(D). The Director had thirty business days to respond. A.D. 8.9(12)(E). Upon receipt of this decision, the inmate had exhausted the Health Services Review for an Administrative Issue. *Id.*

**Plaintiff's Administrative Filings**

Under A.D. 9.6(6)(A), Plaintiff was obligated to file his Level 1 grievance for (1) his Fourteenth Amendment excessive force claims by November 25, 2018 (within 30 days of the October 26, 2018 cell extraction); and for (2) his Fourteenth Amendment claim against custody staff member, Lieutenant Durant, by November 26, 2018 (within thirty days from his October 27, 2018 complaint to DOC staff about his lack of decontamination). Defs.' Rule 56(a) at ¶¶ 12-13. The BCC grievance records from June 19, 2018 to June 19, 2019 reflect that Plaintiff did not file any Level 1 grievances under Directive 9.6 during this time period. *Id.* at ¶ 14.

DOC also maintains an electronic log of all Health Services Reviews and any related appeals for inmate complaints concerning medical treatment or medical staff conduct filed under Administrative Directive 8.9. *See* Defs.' ex., Greene Decl. at ¶¶ 4-8, ECF No. 6. Regional Chief Operating Officer ("RCOO") Michael Greene avers that he has access to this log and made a thorough search for all Health Services Reviews filed by Plaintiff. *Id.* at ¶ 7-8. He declares that

any Health Services Review filed by Plaintiff would have been logged into DOC's electronic database, and that his search revealed only one Health Services Review filed by Plaintiff on November 29, 2022, which was not related to his complaint about indifference to his decontamination needs in October 2018. *Id.* at ¶ 9.

Plaintiff disputes Defendants' assertion that he did not file any Health Services Reviews related to his lack of decontamination on October 27, 2018, and avers that he submitted a Health Services Reviews that was not answered while he was housed at Hartford C.C. *See* Pl.'s Rule 56(a) at ¶ 18, ECF No. 55; Pl.'s Decl., ECF No. 55 at 28; *see also* Defs.' Rule 56(a) at ¶ 18.

## II.   LEGAL STANDARD

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . . ." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a

genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation but must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

### III. DISCUSSION

Defendants' motion for summary judgment argues that Plaintiff's Fourteenth Amendment claims should be dismissed due to his failure to exhaust his prison administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). Defs.' Mem., ECF No. 48-1. Plaintiff opposes Defendants' motion. Pl.'s Opp., ECF No. 55.

#### A. PLRA

The PLRA mandates that incarcerated plaintiffs exhaust all administrative remedies available to them before filing a claim under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). The PLRA requires "proper exhaustion," meaning that plaintiffs must exhaust all available remedies "in compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*,

9

548 U.S. 81, 90 (2006). The requirement of exhaustion of administrative remedies serves "two main purposes." *Id.* at 89 (addressing exhaustion requirements under the PLRA). First, exhaustion gives an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures." *Id.* (cleaned up). Second, exhaustion promotes efficiency because "[c]laims can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.*

Although a plaintiff "need not specifically articulate his claims in grievances in the exact same manner that he articulates them in federal court, he is required to give notice to the defendants about the factual basis of his claims." *Edwards v. Melendez*, 832 F. App'x 50, 54 (2d Cir. 2020) (summary order); *Demuth v. White*, No. 9:18-CV-915, 2020 WL 1030649, at *4 (N.D.N.Y. Mar. 3, 2020) (a plaintiff's claim may be "unexhausted" when the plaintiff "fails to fairly raise [their] claims in the grievance"). To properly exhaust a claim, "a prisoner must allege facts sufficient to alert corrections officials to the nature of the claim, and provide enough information about the conduct at issue to allow prison officials to take appropriate responsive measures." *Singh v. Lynch*, 460 F. App'x 45, 47 (2d Cir. 2012) (summary order) (internal quotations omitted). If a plaintiff does not provide such description or notice, correctional officials are not afforded the "opportunity to address complaints internally," which Congress has required before a plaintiff can pursue a federal case. *Porter v. Nussle*, 534 U.S. 516, 525 (2002).

Nonetheless, the exhaustion requirement may be excused when the administrative remedy is not available in practice even if it is "officially on the books." *See Ross v. Blake*, 578 U.S. 632, 642-643 (2016). The PLRA requires an inmate "to exhaust those, but only those,

10

grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 642 (quoting *Booth*, 532 U.S. at 738). The Supreme Court has established three circumstances where administrative procedure is considered unavailable. These are: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-644. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

Failure to exhaust administrative remedies is an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Thus, defendants "bear the initial burden of establishing ... that a grievance process exists and applies to the underlying dispute." *Hubbs*, 788 F.3d at 59. Once the defendant puts forth evidence that administrative remedies existed and were not exhausted before the plaintiff commenced the action, the plaintiff must put forth evidence that administrative remedy procedures were not available to him under *Ross*, or evidence showing that he did exhaust his administrative remedies. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) ("[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative

11

remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability").[8]

### B.     Plaintiff's Claims Against Correctional Staff

Claims related to conditions of confinement and deliberate indifference to health by correctional staff are subject to the inmate grievance procedure set forth in A.D. 9.6(6). *See Wilson v. McKenna*, 661 F. App'x 750, 753 (2d Cir. 2016) (summary order) (affirming district court's dismissal based on inmate's failure to exhaust his claim against correction officer for deliberate indifference to medical needs under Administrative Directive 9.6). Plaintiff does not dispute his obligation to file his Level 1 grievance under Directive 9.6 for (1) his Fourteenth Amendment excessive force claims against custody staff by November 25, 2018, and (2) his Fourteenth Amendment deliberate indifference claim against custody staff, Lieutenant Durant, for failure to afford him decontamination from the chemical agent by November 26, 2018. *See* Defs.' Rule 56(a) at ¶¶ 12-13; Pl.'s Rule 56(a) at ¶¶ 12-13.

Nor does Plaintiff appear to refute Defendants' claim that he failed to submit a timely grievance under Directive 9.6 to exhaust his administrative remedies against custody staff. Instead, he asserts that his administrative remedies were unavailable because prison staff would not provide him with grievance forms or writing materials while he was housed in the RHU at

---

[8] Although a defendant bears the burden on this affirmative defense at all times, the plaintiff may still have to adduce evidence in order to defeat a motion for summary judgment. *See Hudson v. Kirkey*, No. 920CV0581 (LEK/DJS), 2021 WL 1966721, at *3 (N.D.N.Y. May 17, 2021) (explaining that once defendant introduces evidence of a functional grievance system, plaintiff could not survive summary judgment without submitting competent evidence to indicate unavailability). While it is a defendant's burden to establish the plaintiff's failure to meet the exhaustion requirement, Plaintiff bears the burden of demonstrating that such a process was unavailable. *Brooks v. Mullen*, No. 14-CV-6690-FPG, 2020 WL 6158614, at *5 (W.D.N.Y. Oct. 21, 2020) (citations omitted).

BCC between October 26 and November 25, 2018. Pl.'s Mem., ECF No. 55 at 15. Plaintiff states that he sought assistance from counsel who informed Warden Hannah about his hardship and mistreatment and received a response that an investigation was taking place. *Id.* at 16-17. He represents that, while housed at Hartford C.C., he submitted grievances but received no response. *Id.* at 18; Pl.'s Decl., ECF No. 55 at 28. He maintains that due to the lack of response at Hartford C.C., he again attempted administrative resolution by filing a grievance under Directive 9.6, but it was rejected. *Id.* at 18. Plaintiff's assertion of unavailability does not, however, defeat Defendants' argument that Plaintiff failed to exhaust his remedies under Directive 9.6 in compliance with the PLRA.

In the first instance, Defendants have submitted a supplemental reply showing that Plaintiff filed two (CN 9601) inmate request forms (unrelated to the instant action) dated November 2 and 3, 2018, while he was housed in the RHU at BCC. Supplemental Reply Br., ECF No. 57; Inmate Request Forms, ECF No. 57-1. Plaintiff has made no attempt to counter Defendants' assertion that his representation that he lacked access to remedy forms while in the RHU at BCC is "untrue" and an "utter misrepresentation to this Court" *See* Supplemental Reply Br., ECF No. 57 at 1. In light of this evidence, it is not surprising that Plaintiff's counsel's letter to Warden Hannah did not include any reference to correctional staff denying Plaintiff access to his administrative remedies. Pl.'s exs. A & B, ECF No. 55 at 21-22. Instead, Plaintiff's counsel raised issues of concern about Plaintiff's mental health, use of restraints, assault by correctional staff, disciplinary tickets, and transfer to another facility. *Id.*

Plaintiff represents that he was released from the RHU on November 25, 2018. Pl.'s Mem., ECF No. 55 at 15. No evidence suggests that he was unable to procure the necessary

13

forms once he was released to the general population. And the BCC grievance log shows that inmates were able to submit grievances under Directive 9.6 at BCC in October and November 2018. *See* Defs.' ex. D, BCC Grievance Log, ECF No. 48-7 at 3.

Further, even if he lacked access to an inmate request form while in the RHU, Plaintiff would not have been precluded from filing a viable Level 1 grievance because Directive 9.6(6)(C) provides that an inmate may file his Level 1 grievance without an attached inmate request form if the inmate explains why it is not attached. *See* Defs.' ex. B, A.D. 9.6(6)(C), ECF No. 48-5.[9] *See Rooks v. Santiago*, No. 3:20CV299 (MPS), 2022 WL 561412, at *9 (D. Conn. Feb. 24, 2022) ("Rooks could not have been thwarted from filing his Level 1 Grievance on the basis of DOC staff's failure to answer his inmate requests because Directive 9.6 permits an inmate to file a Level-1 grievance with 'an explanation indicating why CN 9601, Inmate Request Form, is not attached.'"). In sum, the record fails to substantiate Plaintiff's claim that correctional staff thwarted his attempts to exhaust his remedies while he was housed in the RHU at BCC.

Equally unavailing is Plaintiff's second claim about the alleged failure to respond to his grievance filing at Hartford C.C. *See* Pl.'s Mem., ECF No. 55 at 18; Pl.'s decl., ECF No. 55 at 28. Plaintiff has adduced no evidence to suggest that he filed a Level 2 Grievance after he failed to receive any grievance response as provided under with Directive 9.6(6)(I) & (M). He appears to support his claim that he attempted administrative resolution with a Level 1 Grievance dated July 16, 2021 (rejected as untimely under Directive 9.6), submitted more than two years after he was

---

[9] A.D. 9.6(6)(C) provides: "If the inmate was unable to obtain a blank CN 9601, Inmate Request Form, or did not receive a timely response to the inmate request, or for a similar valid reason, the inmate shall include an explanation indicating why CN 9601, Inmate Request Form, is not attached."

transferred out of Hartford C.C. on July 24, 2019 and almost three years after the October 2018 incidents. *See* Pl.'s Mem., ECF No. 55 at 18 (citing Pl.'s ex. C, ECF No. 55 at 25); Defs.' ex. A, Inmate Movement, ECF No. 48-4. This untimely Level 1 Grievance cannot suffice to grieve any claim about a failure to respond to his asserted Hartford C.C. grievance filing because it is procedurally improper under Directive 9.6(6). *See Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements.") (citation omitted).[10]

Thus, Plaintiff's argument that the alleged failure to respond to his grievances at Hartford C.C. thwarted his ability to exhaust his administrative remedies under Directive 9.6 amounts to only a vague and conclusory assertion, which is not sufficient to raise an issue of genuine fact as to the unavailability of his administrative remedies. *See Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (after moving party demonstrates absence of material fact, party opposing a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation.") (internal quotation marks omitted).

Accordingly, the Court will grant the motion for summary judgment on Plaintiff's Fourteenth Amendment excessive force claims against custody staff and his Fourteenth Amendment claim against Lieutenant Durant for deliberate indifference to his need for decontamination from the chemical agent. Defendants have sustained their burden of demonstrating that Plaintiff's remedies under Administrative Directive 9.6 were available, but he

---

[10] Nor can this Level 1 Grievance—filed almost three years after the alleged cell extraction and chemical exposure—exhaust Plaintiff's Fourteenth Amendment claims of excessive force and deliberate indifference to his need for decontamination against custody staff.

nevertheless failed to satisfy all of the steps under Directive 9.6 to exhaust such claims prior to filing this action.

### Plaintiff's Claims Against Medical Staff

Plaintiff was obligated to exhaust his remedies under Directive 8.9 for his Fourteenth Amendment claims of deliberate indifference to his decontamination needs by medical staff members RN Munday, LPC Loehfelm, and RN Adenidji. *Cunningham v. Lupis*, No. 3:21CV00273 (SALM), 2022 WL 2981572, at *8 n.9 (D. Conn. July 28, 2022) (observing Directive 8.9 "is the process applicable to claims against medical staff[.]"). As this claim concerns medical staff 's alleged misconduct for failure to provide him with decontamination after his chemical agent exposure, Plaintiff was required to exhaust his Directive 8.9 remedies for review of an administrative issue. *See* A.D. 8.9(9)(B) & 8.9(12).

Defendants argue that Plaintiff failed to do so. In advancing this assertion, Defendants rely upon RCOO Green's declaration that his search of the DOC electronic Health Services Review log failed to reveal any Health Services Review related to an alleged failure to provide Plaintiff with decontamination after his exposure to the chemical agent in October 2018. *See* Defs.' ex. E, Greene decl., ECF No. 48-8 at ¶¶ 6-11. Plaintiff objects to Defendants' assertion that he failed to file any Health Services Review related to his claim of Fourteenth Amendment deliberate indifference to his need for decontamination. Pl.'s Rule 56(a), ECF No. 55 at ¶ 18. In his declaration, Plaintiff indicates that he filed the relevant grievance once he was transferred from BCC. *See* Pl.'s decl., ECF No. 55 at 28; *see also* Pl.'s Rule 56(a), ECF No. 55 at ¶ 18. Plaintiff's exhaustion requirements under Directive 8.9 differ from that under Directive 9.6. Unlike Directive 9.6, Administrative Directive 8.9 does not have a time requirement for an

16

inmate's submission of a Health Services Review. *Raynor v. Erfe*, No. 3:20-CV-1102 (VLB), 2022 WL 972441, at *6 (D. Conn. Mar. 31, 2022) ("The Court will not impose a timeliness condition on [an inmate's] health service review requests where the DOC has not done so in [its] own directives."); *Carter v. Revine*, No. 14-cv-01553 (VLB), 2017 WL 2111594, at *15 (D. Conn. May 15, 2017) (noting the "stark contrast" between Directive 9.6, which imposes a thirty-day statute of limitations on the grievance process, and Directive 8.9, which "contains no statute of limitations for the initial filing of a Review of an Administrative Issue"). Directive 8.9(12) provides that an inmate should receive a response within thirty days indicating dispositions of "Rejected, Denied, Compromised, Upheld or Withdrawn," and an inmate who is dissatisfied with the response "may appeal within ten days." A.D. 8.9(12)(A)-(B). But it contains no procedure for an inmate to follow for administrative review if he or she fails to receive any timely response to the Health Services Review. *Dorlette v. Wu*, No. 3:16-CV-318 (VAB), 2019 WL 1284812, at *7 (D. Conn. Mar. 20, 2019) ("Directive 8.9 does not provide an inmate with an opportunity to appeal as a matter of course should the recipient of the Health Services Review fail to respond."); *see* A.D. 8.9(12). Where an administrative scheme makes it impossible for an inmate "to ascertain whether and how" to pursue his grievance, the administrative remedy may be considered to be unavailable as "so opaque" and "confusing that … no reasonable prisoner can use [it]." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 124 (2d Cir. 2016) (noting inmate "technically could have appealed his grievance," but concluding the regulatory scheme providing for that appeal was "so opaque" and "so confusing that . . . no reasonable prisoner can use [it].") (internal quotation marks omitted); *see also Olivencia v. Pun*, No. 3:21-CV-739 (OAW), 2022 WL 4329343, at *7 (D. Conn. Sept. 19, 2022) (holding when administrative

17

scheme failed to provide guidance on when inmate could resubmit his grievance after return without disposition, the administrative remedy could be considered unavailable because it was impossible for an inmate to know whether and how to pursue his grievance); *Carter*, No. 3:14-CV-01553 (VLB), 2017 WL 2111594, at *11 (stating that DOC's failure to "set forth any policy whatsoever instructing inmates on how to navigate the grievance process upon a transfer" rendered administrative procedures "incapable of use"); *see also Williams v. Katz*, No. 3:20-CV-1474 (JAM), 2022 WL 3646200, at *6 (D. Conn. Aug. 23, 2022) (noting Directive 8.9 prior to version effective April 30, 2021 "did not contain a statute of limitations for the initial filing of a health services remedy").

Thus, crediting Plaintiff's averment that he filed a Health Services Review that received no response, a finder of fact could determine that Plaintiff's administrative remedies were unavailable because Directive 8.9 provided no guidance about how Plaintiff should proceed after receiving no response to his Health Services Review and, therefore, the remedial scheme was "so opaque" as to be incapable of use. *Priatno*, 829 F.3d at 124. On a motion for summary judgment, the Court cannot resolve the credibility dispute raised by Plaintiff's and RCOO Greene's competing averments. *See, e.g., Carter*, No. 3:14-CV-01553 (VLB), 2017 WL 2111594, at *11 ("The Court cannot render summary judgment for the Defendants on the basis of their contention that Carter did not file grievances when Carter claims that he did. These conflicting factual scenarios create the classic genuine issue of material fact."). *See also Baltas v. Erfe*, No. 3:19CV1820 (MPS), 2022 WL 4260672, at *10 (D. Conn. Sept. 15, 2022) (declining to render credibility determination for exhaustion issue on a motion for summary judgment); *Mustafa v. Stanley*, No. 3:19-CV-1780 (VAB), 2022 WL 4120781, at *10 (D. Conn. Sept. 9, 2022)

(declining to resolve credibility issue raised by competing account relevant to inmate's exhaustion of administrative remedies).

Accordingly, construed most favorably to Plaintiff, the present record raises a disputed issue of fact about whether Plaintiff's administrative remedies under Directive 8.9 for his complaints about medical staff were unavailable. Thus, Defendants' argument for summary judgment on nonexhaustion grounds must be denied for Plaintiff's Fourteenth Amendment deliberate indifference claims against RN Munday, LPC Loehfelm, and RN Adenidji.

If the Court determines later that any of Plaintiff's Fourteenth Amendment claims against RN Munday, LPC Loehfelm, RN Adenidji should proceed to the merits before a jury, the Court will hold a short hearing—immediately before the jury trial—to resolve the questions of fact relevant to Plaintiff's compliance with the PLRA's exhaustion requirement. *See Morgan v. Watson*, No. 3:20-CV-00254, 2022 WL 17986695, at *4 (D. Conn. Dec. 29, 2022) ("Exhaustion is a question of law that must be decided by the Court, not by a jury.") (citing *Messa v. Goord*, 652 F.3d 305, 308-310 (2d Cir. 2011)).

IV.   **CONCLUSION**

For the foregoing reasons, the motion for summary judgment [ECF No. 48] is GRANTED in part and DENIED in part. The Court GRANTS the motion for summary judgment on Plaintiff's Fourteenth Amendment claims against Lieutenant Durant and Correction Officer Haynes. The Court DENIES the motion for summary judgment on Plaintiff's Fourteenth Amendment claims against RN Munday, LPC Loehfelm, and RN Adenidji

/s/ Michael P. Shea
Michael P. Shea
United States District Judge

**SO ORDERED** this 24th day of August 2023, at Hartford, Connecticut.